Nash, .T.
 

 This is an action of debt
 
 qui tam,
 
 brought against the .defendant to recover one hundred dollars, as a penalty incurred for a violation of the law in marrying a couple. The declaration states, that “ the defendant, being a justice of the peace for Henderson Dounty, on the first day of March 1842, did, unlawfully, wilfully and knowingly, join together in matrimony, the man and woman (whose names are set forth in the declaration) without any publication of bans of matrimony according to law, and without a license for the said marriage from the Clerk of the proper Court of Please and Quarter Sessions, first had and obtained” &c.
 

 The act constituting this court renders it the duty of the judges “ to render, in every case, such sentence, judgment and decree, as, on an
 
 inspection of the whole record,
 
 it shall appear to them ought, in law, to be rendered thereon,” Rev. Stat. ch. 33, s. 7. The statute, for a violation of which this action is brought authorises, in the 2d sec., the Clerks of the several County Courts to issue marriage license to any person applying for the same, first taking bond to the State of North
 
 *641
 
 Carolina, with sufficient surety, injhe sum of $1000, with condition, that there is no lawful'cause to''obstruct the mar-
 
 tiage
 
 for which such license is desired, &c.” which license shall be directed to any authorised minister or justice of the peace.” • In the 3d section it is enacted, “ every minister of t/he gospel, qualified as in this act before directed, or anyother person appointed by their' respective churches, as a reader, is hereby authorized and impowered to publish the bands of matrimony between any two persons requesting the same, &c.” “ and shall give a certificate of such publication, when demanded,
 
 directed to any authorized minister or
 
 justice.”— The 4th section is the one under which the action is brought. “If any minister or justice of the peace, shall knowingly join together any two persons in any other way or manner, &c.’’ The way or manner here mentioned, is the requirement of the two preceding sections. It has ever been the practice, as far as our information extends, for the justice or the magistrate to require the production of the marriage license, signed by the proper Clerk, before performing the ceremony. This license is, to the officiating officer, the
 
 evidence
 
 of the fact, that the person, to whom it is granted, has complied with the law, that he has given the bond the law directs, and, upon this evidence alone, is he authorized to act. For the license is to be
 
 directed
 
 to some minister or justice of the peace; if not intended to be his warrant, for performing the ceremony, to what purpose is it issued ? This appears to have been the understanding of the draftsman of the declaration. Apart of the charge is, without “a
 
 license
 
 for the said marriage, first had and obtained from the Clerk of the County Court, <fcc.” Is there any difference, in the evidence required by the 3d section, when the parties proceed by publication of bans. We can see none. The object of the law in each case is the same, to protect individuals aud itself from imposition. In the one case, the party applying gives bond, with surety, that “ there is no lawful cause to obstruct the marriage.” In the other, public notice is required to be given. It is public, that any person may object, who knows of any lawful impediment.
 
 *642
 
 Marriage, under publication of bans, is a very ancient custom 'n church of England, and is still observed by its members in that country. In this State, when the ceremony is performed by one of its members, it is, by the formularies of the church, required of him to ask, if any one knows of any good reason, why the parties should not be joined in wedlock; if so, they are required to ¡mention it then. The reason why these forms are required is, evidently, to guard against imposition, and the minister or magistrate is required to act under the same evidence, that the guards of the law may be enforced. When the parties proceed by publication of bans, the minister, making the publication, is required
 
 to
 
 grant a certificate of such
 
 publication,
 
 when demanded, which certificate is to be directed to some minister or justice of the peace. In the latter case, then, as in the former, the certificate of the minister is, to the officiating magistrate or minister, his evidence, that the bans have been published and his warrant for performing the ceremony. It is his warrant, so far as to protect him against any forfeiture under the act. For, if a false certificate be sent to him from the minister, he would not incur the penalty, although the'bans had not been published.— It may be said, that the giving of the bond in the one case» and the publication of bans in the other, is the important matter required by the act. This is certainly ■ true, but the law has required the certificate, as the evidence, upon which the ceremony is to be performed, and though the fact may be, that the bond was given or the bans published, yet the penalty is incurred, if the marriage licence, or certificate of the publication of the bans, is not pronounced, or shown to have been actually granted. We are of opinion, that the declaration filed in this case is defective, in stating that the marriage was solemnized without any publication of bans. It ought to have alleged, that the marriage ceremony was solemnized without any
 
 certificate
 
 of such publication, as required by law. We hold that the nompublication of bans can no more be laid in the declaration as the
 
 gravamen
 
 of the defendant’s offence in the one case, than the not giving a bond
 
 *643
 
 can in the ether. For if a false certificate be sent to him from the minister, he would not incur the penalty, although the bans had not been published. We do not mean to say, that, in all cases, when a clerk grants a marriage licence, or a minister a certificate, that, upon their production, the justice of the peace, or the officiating clergyman, is bound to perform the service, or that he is not bound to proceed. All that we intend to say is, when he acts upon the evidence pointed out to him by the law he can not subject himself to any penalty. We have nothing to do with the motives of the plaintiff in instituting these proceedings. He appears before us as a public informer, seeking to enforce against the defendant a forfeiture, incurred by the violation of law. He must be prepared to show by his evidence, that by law he has a right to demand and receive the money forfeited. We think he has not done this, that there is in his declaration a defect fatal to his claim, and that his judgment must be arrested.
 

 Per Curiam, Judgment arrested.